IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

C&C BUILDING AUTOMATION
COMPANY, INC., OMNIBOARD,
INC., CHARLES M. CHAVEZ,
and CHARLES R. CHAVEZ,

    Plaintiffs,

  v.

CHARLES DUPLER,

    Defendant.

No. C 18-06692 WHA

**ORDER RE MOTION TO DISMISS**

**INTRODUCTION**

In this action for declaratory relief, the owner of intellectual property moves to dismiss for lack of personal jurisdiction. For the following reasons, the motion is **DENIED**.

**STATEMENT**

The question presented is whether a New Hampshire investor who acquired a patent (and other intellectual property) via foreclosure may be subjected to a declaratory relief suit in California to address his claims that California plaintiffs are infringing the patent (and other intellectual property). The issue arises out of the following circumstances.

Plaintiff Omniboard, Inc., a California corporation, owned a patent covering "the Maverick technology" for management of energy usage in buildings. Plaintiff C&C Building Automation Company, Inc., a California corporation, manufactured the Maverick machine and

sold and installed it with its software. At all material times, both companies were owned and/or operated by plaintiffs Charles M. Chavez and Charles R. Chavez, both California residents.

In May 2016, Omniboard needed additional investors. A board member made an introduction to New Hampshire investor, defendant Charles Dupler. Soon, Dupler signed documents to loan Omniboard one million dollars, collateralized by the patent and stock in C&C. Dupler made the agreed upon advances in 2016 and 2017, based on sales and installation numbers that plaintiffs had provided to him. The original agreements had no venue clause.

When Dupler realized in early 2017 that Omniboard had problems, he imposed a borrower action plan, providing two-months for modifications which included reduction of operating expenses, removal of personnel, and installation of operational goals. The plan included the hiring of Ronald Dupler, a relative of Charles, as a paid consultant to provide advice related to product commercialization. Charles Dupler, Charles M. Chavez, and a director of Omniboard each invested an additional $50,000 under this plan (Dkt. No. 20, Exh. 6). This agreement had a Maine venue clause (Dkt. No. 20, Exh. 6 at 12). Another out-of-state consultant was hired at the end of the two-month period to oversee Omniboard, paid for by Dupler.

Dupler foreclosed in November 2017 and became the owner of the patent. The foreclosure has not been contested. Plaintiffs complied with foreclosure and sent hardware and software to New Hampshire.

In April 2018, Dupler's attorney wrote to plaintiffs and demanded the following: (1) to pay $1,300,000 in C&C stock (the amount of deficiency); (2) to cease and desist patent infringement; and (3) to provide an immediate and comprehensive written accounting related to Maverick units and related technology for the past five years (Dkt. 20, Exh. 8 at 2).

In June 2018, Dupler wrote to plaintiffs again, accusing them of infringing his patent and demanding prompt repayment of the note with extra costs.

In July 2018, Dupler accused plaintiffs of securities fraud by having inflated sales numbers in 2016 and 2017 in order to receive the continuing payments under the note. Dupler also renewed infringement claims regarding the Maverick technology.

Plaintiffs denied all of Dupler's claims of infringement and misappropriation of intellectual property. They further asserted that C&C had the right to use and sell the 259 Maverick units in its possession and that C&C could service and/or support Maverick units in its customers' possession. C&C contended that any purchaser of Maverick units, C&C included, received a perpetual, royalty-free sublicensable license to the software required to control the Maverick units (Compl. ¶ 11).

Plaintiffs subsequently filed the complaint for declaratory relief followed by defendant's motion to dismiss for lack of personal jurisdiction.

**ANALYSIS**

This order will apply the law of the United States Court of Appeals for the Federal Circuit, as the defendant wants. Even so, defendant's argument fails.

There are two requirements for personal jurisdiction: (1) that the forum state has a long-arm statute that permits service of process, and (2) that asserting jurisdiction does not violate defendant's due process rights. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). Since California's long-arm statute is coextensive with the limits of due process, the test for determining whether a nonresident defendant is subject to personal jurisdiction in California collapses into a single inquiry: whether jurisdiction comports with due process. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359–60 (Fed. Cir. 2001); *see also* CAL.CIV. PROC. CODE § 410.10.

Where the district court's ruling on personal jurisdiction in a patent action is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only make a *prima facie* showing that defendants are subject to personal jurisdiction. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). The district court must accept the uncontroverted well-pled allegations in the plaintiff's complaint as true and resolve any factual conflicts in the plaintiff's favor. *Silent Drive, Inc. v . Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).

In the case of specific jurisdiction, the United States Court of Appeals for the Federal Circuit applies a three-factor due process test: (1) whether the defendant "purposefully

3

directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities within the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair." *Inamed Corp.*, 249 F.3d at 1360 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995)). The first two factors comprise the "minimum contacts" portion of the jurisdictional framework, and the third factor concerns whether the exercise of personal jurisdiction is reasonable and fair. Plaintiff bears the initial burden to satisfy the first two factors. Once satisfied, the burden shifts to defendant to show additional considerations that would make jurisdiction unreasonable. *Akro Corp.*, 45 F.3d at 1546.

The United States Court of Appeals for the Federal Circuit recently clarified the first two prongs of the due process test, holding that a defendant may "purposefully direct" his activities at residents of a forum when the defendant sends a cease-and-desist letter to a potential plaintiff in that particular forum, and that a subsequent declaratory judgment action by that potential plaintiff "arises out of or relates to" the defendant's activity — namely, the cease-and-desist letter. *New World Int'l, Inc. v. Ford Global Techs., LLC*, 859 F.3d 1032, 1037–38 (Fed. Cir. 2017).

Under the third prong of the test, personal jurisdiction cannot be based solely on the act of sending ordinary cease-and-desist letters into a forum. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998).

### 1. FACTOR ONE: WHETHER DEFENDANT "PURPOSEFULLY DIRECTED" ITS ACTIVITIES AT RESIDENTS OF THE FORUM.

Dupler directed a massive effort into the forum. He invested in a small closely-held company in California and bargained for rights to take over the business.

He installed a management plan that called for the hiring of his relative and involved an out-of-state consultant, who traveled to California. He foreclosed and received the patent as collateral, and then demanded $1,300,000 — more than the full value of his investment in C&C stock.

He sent multiple letters to plaintiffs in California demanding stock settlements, loan paybacks, and years of sales history dated long before his investment. His letters also contained

4

cease-and-desist demands. Dupler's letters "purposefully directed" his charges of infringement to plaintiffs in California. *See Jack Henry & Associates*, 910 F.3d 1199, 1204 (Fed. Cir. 2018).

This order finds that Dupler's actions were sufficiently directed (and purposely so) at plaintiffs, who are residents of this forum.

### 2. FACTOR TWO: WHETHER CLAIM "ARISES OUT OF OR RELATES TO" THE DEFENDANT'S ACTIVITIES WITHIN THE FORUM.

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, th[e] 'fair warning' requirement is satisfied if . . . the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Defendant's actions "must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Autogenomics*, 566 F.3d at 1017.

The United States Court of Appeals for the Federal Circuit stated in *New World International, Inc. v. Ford Global Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017) that when a defendant sends a cease-and-desist letter to a potential plaintiff in that particular forum, a subsequent declaratory judgment action by that potential plaintiff "arises out of or relates to" the defendant's activity — namely, the cease-and-desist letter. So too here. Dupler's letters caused plaintiffs to file for declaratory relief. These charges "arise out of or relate to" Dupler's patent licensing activities in California.

This order therefore finds that plaintiffs' claims arise out of Dupler's forum-related activities.

### 3. FACTOR THREE: WHETHER ASSERTION OF PERSONAL JURISDICTION IS "REASONABLE AND FAIR."

The United States Court of Appeals for the Federal Circuit noted that there has been confusion regarding their decisions in *Red Wing Shoe* and *Avocent.* Parties litigating since those decisions have believed that court created a rule that letters charging infringement can never provide specific jurisdiction. *Jack Henry & Assocs.* 910 F.3d. at 1203. That court stated, had those decisions barred an infringement letter from leading to specific jurisdiction, those decisions would contradict the Supreme Court's directive to "consider a variety of interests"

5

in assessing whether jurisdiction would be fair. *Id*. at 1206 (citing *Bristol-Myers Squibb Co. v. Superior Court of Cal*., 137 S.Ct. 1773, 1780 (2017)).

Dupler cites a litany of cases, arguing that plaintiff failed to allege sufficient activities relating to the validity and enforceability of the patent, including *Autogenomics, Inc. v. Oxford Gene Tech, Ltd*., 566 F.3d 1012 (Fed. Cir. 2009) and *Silent Drive, Inc. v. Strong Indus., Inc*., 326 F.3d 1194, 1202 (Fed. Cir. 2003), which also discussed disregarding sporadic and irrelevant contacts with the forum state. (Dkt. No. 22 at 3). Dupler notes that an infringement letter sent by an out-of-state patentee into a forum, without more, is insufficient to satisfy the third factor requiring fair and reasonable jurisdiction. *Autogenomics, Inc.*, 566 F.3d at 1020 (citing *Red Wing Shoe*, 148 F.3d at 1360–61).

Here, there is more. Dupler took over a California business, sapped it of its intellectual property and now wants to impose demands on the California business without being sued in California. This course of conduct meets the "minimum contacts" test. Enforcement actions are but one example provided by the United States Court of Appeals for the Federal Circuit of 'other activities' with which to meet the 'fair and reasonable prong' of due process analysis. *See Xilinx*. 848 F.3d at 1354. (Unlike in *Xilinx*, Dupler himself did not actually travel to California. He did, however, send an out-of-state consultant to California.)

In *New World International, Inc. v. Ford Global Techs., LLC*, 859 F.3d, 1032 (Fed. Cir. 2017), it is noted that plaintiff did not point to any additional activities in the forum, beyond the argued license, that would give rise to specific jurisdiction. *Id.* at 1043. That court then noted that the Supreme Court found jurisdiction when the 'quality and nature' of [a defendant's] relationship to the [forum] can in no sense be viewed as 'random,' 'fortuitous,' or 'attentuated.'" *Ibid.* (citing *Burger King*, 471 U.S. at 480). Here, the quality and nature of Dupler's contacts with the plaintiffs and the forum are not random, fortuitous, or attenuated. His investment in a small, closely-held corporation, and his ownership (via preemptive foreclosure) of the underlying collateral patent were planned and systematic.

Five factors must be considered to determine whether exercise of specific jurisdiction over Dupler would be reasonable and fair: (1) the defendant's burden in appearing in the

6

forum; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interest of all sovereigns in promoting substantive social policies. *Burger King*, 471 U.S. at 477.

For Factor One, the burden is on the defendant to show that jurisdiction is fundamentally unfair, putting him at a severe disadvantage in the forum. *Burger King*, 471 U.S. 462 at 487. "With respect to this factor, the Supreme Court has explained, [w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987). Dupler argues that jurisdiction would cause him personal and professional hardships. (Dkt. No. 22 at 3).

Dupler was able to interact closely with California-based management at plaintiffs' corporations, arrange a substantial loan, and install a borrowers action plan overseen by his consultant. He now owns the patent that was collateral for his loan. Because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes related to such activity. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223 (1957). Dupler has not met his burden to show that jurisdiction is unfairly burdensome.

For Factor Two, plaintiffs signed a note with Dupler, based on the value of their patent. "Well-defined interests in commerce and scientific development" allow California to protect its residents. *Viam Corp. V. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996). Plaintiffs argue that they paid Omniboard for 259 Maverick units hardware and are creating a separate technology named Titan. California also has a "substantial interest in protecting its residents from unwarranted claims of patent infringement*.*" *Elecs. For Imaging v. Coyle*, 340 F.3d 1344, 1352 (Fed. Cir. 2003). As Dupler has threatened to sue customers of plaintiffs as infringers, there may well be future derivative litigation (Dkt. No. 20, Exh. 8 at 19). "Just as a state has a substantial interest in preventing patent infringement within its borders, it also has

a substantial interest in protecting its residents from claims of patent infringement that may be unwarranted . . . ." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1356 (Fed. Cir. 2002). California has a substantial interest in protecting the rights of its small technology-innovation companies whose main business derives from use of their homegrown, patented intellectual property. Dupler argues that some conflict exists with respect to new Hampshire's sovereignty and interest in this matter. (Dkt. No. 22 at 6).

For Factor Three, plaintiffs, individual and corporate, are residents of California and have an interest in obtaining convenient and effective relief. Dupler argues that New Hampshire is just as suited to resolve this dispute as is California. *Ibid.* Jurisdiction over plaintiffs' claims in California would provide an efficient resolution of the controversy, as plaintiff corporate employees, records, and the 259 units are in California.

For Factor Four, the judicial system's interest in obtaining the most effective resolution of the controversy is met when multiple derivative lawsuits are efficiently handled in the proper forum.

For Factor Five, the common interest of all sovereigns in promoting substantive social policies is met when courts protect important rights where they originate and belong. Dupler states that the intellectual property is not of significant social import, so California has a limited interest in adjudicating the dispute. *Ibid.* As the patent offers energy efficiency management, the intellectual property does have social import.

Defendant did not meet his burden to show additional considerations that would make jurisdiction unreasonable. These factors weigh for plaintiffs.

Accordingly, this order finds specific jurisdiction over defendant in this patent action for declaratory relief based on the record to date, subject to change if discovery shows the well pled allegations are false. The answer is due on **FEBRUARY 8, 2019**.

**CONCLUSION**

Defendant's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 29, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE